# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EDUARDO ARAIZA,

        Petitioner,

v.                                                                           CIV. NO. 04-1438 RB/WPL

JOSE ROMERO, Warden,
MARTHA ANNE KELLY,
Attorney General,

        Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

      Eduardo Araiza, an instructor at New Mexico State University, was convicted of seven crimes arising out of a sexual attack on a student.[1] [Doc. 7 Ex. A.] After unsuccessfully pursuing a direct appeal and state habeas relief, he filed a timely *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] [Doc. 1]

      This matter is before me on Araiza's petition, Respondents' motion to dismiss, and the state court record. For the reasons that follow, I recommend that Respondents' motion to dismiss be granted and Araiza's petition be denied.

---

[1] Araiza was convicted of attempted murder in the first degree, kidnapping, criminal sexual penetration in the first degree, criminal sexual penetration in the second degree, attempted criminal sexual penetration in the third degree, aggravated battery with a deadly weapon, and criminal sexual contact. [Doc. 7 Ex. A p.2]

[2] Although I denied Araiza's motion for appointment of counsel [Doc. 14], Michael R. Gibson subsequently entered his appearance for Araiza. [Doc. 16]

## **PROPOSED FINDINGS**

### FACTUAL BACKGROUND

This case arises out of events that occurred on March 22, 1995.[3]   [Am. Pet. for Writ of Habeas Corpus, Doc. 7 Ex. P p. 2 [hereinafter "Am. Pet."]; Respondent's Reply to Petitioner's Am. Pet. for Writ of Habeas Corpus, Doc. 7 Ex.Q  p. 2 [hereinafter "Resp't Reply"]]  Jennifer McBrayer, the victim, was a student in Araiza's class at New Mexico State University and was eight months pregnant at the time.  [Am. Pet. at 2; Resp't Reply at 2]

Ms. McBrayer went to Araiza's home to pick up some make-up work.  [Am. Pet. at 2; Resp't Reply at 2]  When she reached his apartment, Araiza stunned her with a stun gun and forced her inside the apartment.   [Am. Pet. at 2; Resp't Reply at 2]   During an incident that lasted approximately three hours, Araiza restrained Ms. McBrayer, attempted to penetrate her with his penis, and penetrated her anus and vagina with his fingers.  [Am. Pet. at 2; Resp't Reply at 2-3]  He also stabbed her with a knife.  [Am. Pet. at 2; Resp't Reply at 2]

Araiza finally allowed Ms. McBrayer to leave the apartment and she immediately called the police. [Am. Pet. at 3; Resp't Reply at 3]    Araiza also left the apartment and called the police, offering to surrender.  [Am. Pet. at 3; Resp't Reply at 3]  Araiza was arrested and gave the police a statement. [Am. Pet. at 3; Resp't Reply at 3-4]

### PROCEDURAL BACKGROUND

On September 17, 1996, the jury found Araiza guilty on all charges.  [Doc. 7 Ex. A p. 1]  On March 3, 1997, Araiza was sentenced to 59½  years of incarceration, plus $51,000 in fines.  *Id*. at 4.  Araiza's counsel filed a notice of appeal and docketing statement with the New Mexico Court

---

[3]Araiza did not deny the allegations, but sought to prove that he was not guilty by reason of insanity.  [Doc. 7 Ex. C p. 7; *see* Doc.  7 Ex. J p. 10]

of Appeals. [Doc. 7 Ex. B, C] In the docketing statement Araiza claimed that the trial court erred in denying a new trial based on the changed testimony of Dr. Tommy Thompson, a mental health expert witness, and that the prosecutor committed misconduct in asking experts about the consequences of the verdict. [Doc. 7 Ex. C pp. 8-9] Araiza also alleged that the court erred in denying his request to instruct the jury at the end of the instruction for each crime charged that it must find that Araiza was not insane at the time of the commission of the crime. *Id*. at 9.

In a proposed summary affirmance, the New Mexico Court of Appeals rejected each of Araiza's contentions. [Doc. 7 Ex. D] While expressing some concern with Dr. Thompson's changed testimony, the court could not say that the trial court abused its discretion in refusing to grant a new trial. *Id*. The court noted that Araiza had not shown how the prosecutor's questions regarding the consequences of the verdict cast doubt on the verdict's validity. *Id*. It further proposed to hold that the instruction was sufficient to notify the jury that it must consider Araiza's mental condition. *Id*.

In his motion to amend the docketing statement, Araiza requested permission to add two issues to the docketing statement, which he titled "2B" and "2C". [Doc. 7 Ex. E p. 1] He first alleged, as issue 2B, that counsel was ineffective for failing to object when the prosecutor elicited testimony from an expert witness regarding the effect of the verdict. *Id*. As issue 2C, he alleged that the trial court committed reversible error in allowing this testimony notwithstanding trial counsel's failure to object. *Id*.

In an accompanying memorandum in opposition to summary affirmance, Araiza first disputed the court of appeals' characterization of the degree of contradiction in Dr. Thompson's testimony. *Id*. at 6-7. Araiza also claimed that a new trial was warranted since the changed

3

testimony of Dr. Thompson was newly discovered evidence. *Id*. at 6-8. He argued that Dr. Thompson was the State's best witness on insanity and mental illness and that the testimony would change the result of the trial. *Id*. at 7. As to issue 2A, Araiza argued that it was improper under New Mexico case law for a lawyer to make comments in front of the jury regarding the consequences of its verdict. *Id*. at 11. Therefore, it was error for the prosecution to elicit such testimony from a witness. *Id*. at 11-12. Regarding issue 2B, Araiza contended that trial counsel's failure to object when the prosecution elicited testimony regarding the consequences of its verdict was the result of counsel's unfamiliarity with New Mexico case law and did not represent a trial strategy. *Id*. at 14. On issue 2C, Araiza argued that the trial court had a duty to prevent improper statements from tainting the jury's deliberations and that its failure to do so constituted plain error. *Id*. at 15-16. As to issue 3, Araiza maintained that unless the trial court included information on insanity in the instructions for each separate offense, there would exist a substantial risk that the jury would be confused or follow an erroneous instruction. *Id*. at 19.

In a second proposed summary affirmance, the New Mexico Court of Appeals reiterated its position on issues 1, 2A, and 3. [Doc. 7 Ex. F] In response to issue 2B, the court stated that there were plausible reasons for not objecting to the testimony: to alleviate the jury's concern that Araiza might soon be released and to avoid leading the jury to believe it was not hearing the full story on the insanity claim. *Id*. The court proposed to hold that Araiza failed to make a prima facie showing of ineffectiveness. *Id*. As to issue 2C, the court stated that although the comments were improper Araiza did not show that these comments influenced the jury's guilt or innocence determination. *Id*.

In Araiza's second memorandum in opposition to summary affirmance, Araiza stated that

he had no new facts or authority to present to the court. [Doc. 7 Ex. G] He requested that the court reconsider its proposed disposition. *Id*. The court assigned the case to the general calendar. [Doc. 7 Ex. H]

Araiza's brief-in-chief made arguments nearly identical to his earlier memorandum in opposition to summary affirmance. [Doc. 7 Ex. I] In its answer brief, the State argued that questions by the prosecution about the consequences of the verdict were proper since the defense opened the door to the questions. [Doc. 7 Ex. J pp. 14-16] It further argued that Araiza could not show that the failure to object was constitutionally unreasonable or that objection would have changed the result of the trial. *Id*. at 18-19. The State also maintained that the trial court's admission of the testimony regarding the consequences of the verdict did not rise to the level of fundamental error, the proper standard since there was no objection to the testimony. *Id*. at 22-23. Regarding the issue of changed testimony, the State contended that there was no material change in Dr. Thompson's testimony and that the claimed newly discovered evidence was neither new nor newly discovered. *Id*. at 28-31. As to the issue of erroneous jury instructions, the State argued that the jury was properly instructed since there was a jury instruction informing them that the prosecution must prove beyond a reasonable doubt that the defendant was not insane as to each crime charged. *Id*. at 33-34.

In a memorandum opinion, the New Mexico Court of Appeals affirmed the decision of the trial court. *State v. Araiza*, No. 18,338 (N.M. Ct. App. June 22, 1998); [Doc. 7 Ex. K.] Araiza then filed a petition for writ of certiorari with the New Mexico Supreme Court. [Doc. 7 Ex. L] The court denied the petition. [Doc. 7 Ex. M]

Araiza then filed a *pro se* petition for writ of habeas corpus in the state trial court. [Doc. 7

Ex. O]  After counsel was appointed, Araiza filed an amended petition for writ of habeas corpus. [Doc. 7 Ex. P]  The trial judge denied the petition. [Doc. 7 Ex. R]  Araiza filed a petition for writ of certiorari with the New Mexico Supreme Court. [Doc. 7 Ex. S]  The Supreme Court remanded for an evidentiary hearing on the claim of ineffective assistance of counsel.  [Doc. 7 Ex. T]

The mandate from the Supreme Court limited the hearing to two specific issues: whether trial counsel was ineffective when he (1) opened the door to prosecution questioning about the verdict's consequences, and (2) failed to object to the court's answer to a juror question about the burden of proof for a "guilty but mentally ill" verdict. [Doc. 7 Ex. W, T]  Following the evidentiary hearing the trial court denied the amended petition for writ of habeas corpus. [Doc. 7 Ex. W]  Araiza filed a petition for writ of certiorari [Doc. 7 Ex. X], which the New Mexico Supreme Court denied. [Doc. 7 Ex. Y]

Araiza then filed an application for habeas corpus in federal court. [Doc. 1].  The State filed a motion to dismiss. [Doc. 16]  I granted Araiza several extensions of time to respond to the motion to dismiss [Docs. 14, 18], but no response has been filed.

## STANDARDS OF REVIEW

A district court has jurisdiction to grant a writ of habeas corpus on behalf of a person in state custody if the custody is in violation of federal law. *See* 28 U.S.C.A. § 2254(a) (West 1994).  The Antiterrorism and Effective Death Penalty Act (AEDPA) modified the role that federal habeas courts play in reviewing state convictions. *Bell v. Cone*, 535 U.S. 685, 693 (2002). Congress enacted AEDPA to prevent federal habeas "retrials" and to ensure that state convictions are given effect to the fullest extent possible. *See id.*  To those ends, AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

> claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp. 2004).

Under the "contrary to" clause of section 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision is not "contrary to" simply because the state court did not cite Supreme Court opinions. *See Early v. Packer*, 537 U.S. 3, 8 (2002). The state court need not even be aware of the relevant Supreme Court cases, as long as neither its reasoning nor its result contradicts them. *Id.*

Under the "unreasonable application clause," "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The focus of this inquiry is whether the state court's application of clearly established federal law is "objectively unreasonable," and "objectively unreasonable" is not synonymous with "incorrect." *Bell*, 535 U.S. at 694.

Under section 2254(d)(2), a decision is based on an unreasonable determination of the facts if it is shown by clear and convincing evidence that the factual finding is erroneous. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *see also* 28 U.S.C.A. § 2254(e)(1) (requiring federal habeas court to presume that state court's determination of factual issues is correct unless the petitioner rebuts

7

the presumption by clear and convincing evidence).

### INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Araiza asserts that his trial counsel was ineffective in two ways. To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Araiza raised both of his claims in state court proceedings. The evidentiary hearing regarding Araiza's petition for writ of habeas corpus ordered by the New Mexico Supreme Court was specifically limited to the two issues he brings in this action. [*See* Doc. 7 Ex. T, Ex. W p. 1] The trial court found that neither claim had merit and denied the petition for writ of habeas corpus. *Id.*

Because the state courts adjudicated these claims on their merits, AEDPA's standard of review applies. 28 U.S.C.A. § 2254(d). This means that Araiza cannot succeed merely by convincing this Court that the state courts applied *Strickland* incorrectly. Instead, he must show that the state courts' decisions were objectively unreasonable. *Bell*, 535 U.S. at 698-99. For the reasons explained below, I conclude that the state courts' decisions were not objectively unreasonable.

*Jury Questions Regarding the Burden of Proof*

Araiza first claims that his trial counsel provided ineffective assistance by failing to object to the court's answers to jury questions regarding the burden of proof in a "guilty but mentally ill" jury instruction. [Doc. 1 p. 6] The jury first asked, "What is the standard for determining that judgment was impaired? Certainty? Reasonable doubt?" [R. Proper 294] The Court responded, "Please use your common sense and refer to the instruction." *Id*. The jury also asked, "Must the State prove to our satisfaction beyond a reasonable doubt that the defendant was not <u>mentally ill</u> at the time of commission of each crime?" *Id*. at 295. The judge responded, "No. The State does not have to prove that the defendant was not mentally ill."[4] *Id*.

During the evidentiary hearing in the state habeas court, trial counsel testified that he had attempted to maintain the jury's focus on the "not guilty" verdict, believing that there was no significant difference between "guilty" and "guilty but mentally ill." [Doc. 7 Ex. W p. 3] Trial counsel did object to the answer regarding the burden of proof to find mental illness, maintaining that the jury should receive no answer other than a general admonition to follow the instructions. *Id*. at 2-3. He testified that in his experience answering jury questions was a risky business. *Id*. at 3. Counsel felt that focusing on and clarifying the "guilty but mentally ill" would make it more likely that the jury would return that verdict than "not guilty by reason of insanity." *Id*.

The state habeas court noted that there was "little legal significance between the two guilty verdicts" and that mental illness is not an element of any crime or an affirmative defense. *Id*. Rather, "[t]he sole effect of a 'guilty but mentally ill' verdict is to impose a discretionary duty upon the Corrections Department to evaluate and treat the defendant's mental illness 'as it deems

---

[4] The State does have to prove that the defendant was not insane at the time of the commission of the act charged. *See State v. James*, 511 P.2d 556, 558 (N.M. Ct. App. 1973).

necessary.'" *Id*. The court ruled that counsel's attempt to avoid focusing the jury's attention on the "guilty but mentally ill" verdict was a reasonable trial tactic that could not have significantly prejudiced the defense. *Id*.

Araiza has not cited nor have I found any case with indistinguishable facts which the Supreme Court decided differently or a Supreme Court case arriving at a conclusion opposite to that of the New Mexico courts. Araiza has not demonstrated that the state courts unreasonably applied *Strickland*. The decision to avoid focusing attention on the "guilty but mentally ill" verdict was a reasonable trial tactic.

### *Eliciting Testimony Regarding the Consequences of the Verdict*

Araiza claims that his trial counsel was ineffective by questioning witnesses about the possible consequences of the verdicts available to the jury. [Doc. 1 p. 7] Defense counsel questioned one of the State's witnesses, Dr. Rick McGahey, as follows:

> Counsel: It's your opinion that [Mr. Araiza] does not need to be treated at all for any kind of mental disorder?
>
> Dr. McGahey: I don't know about using drugs. I can certainly think of some counseling issues.
>
> Counsel: If [Mr. Araiza is] found by this jury not guilty by reason of insanity, you don't want to see him go free, do you? You want him to be treated, don't you?
>
> Prosecutor: Objection. [almost inaudible]
>
> Counsel: Don't you think he needs some kind of treatment for his mental illness if he's not guilty by reason of insanity? Isn't he going to require some treatment? Prolonged and protracted for years?
>
> Dr. McGahey: I would say he could certainly benefit from counseling, but again I'm a psychologist, not a psychiatrist. But I can't see any use of medication except an anti-anxiety drug.

[Doc. 7 Ex. I pp. 4-5]

During cross-examination of another of the State's witnesses, Dr. Tommy Thompson, defense counsel questioned the witness as follows:

> Counsel: The prosecution was asking about, well, what's going to happen if the jury finds Mr. Araiza not guilty by reason of insanity, and are you trying to leave the impression with the jury that he's just going to go out free and walk around the streets of Las Cruces when that happens?
>
> Dr. Thompson: No, I think they asked me what happens if the jury were to find him not guilty by reason of insanity and there was no indication by the state hospital of a mental disorder. And what I said in that situation he essentially could not be held, he would be not guilty and there would be no legal way to confine him to a hospital.
>
> Counsel: But if he is legally committed with a bipolar disorder type 1, he's going to stay there for years.
>
> Dr. Thompson: Actually he's not. He's going to stay there until such time as his behavior is no longer manic and he is on medication. Therein lies the problem with individuals who are bipolar, and that is, they don't like to take their medication. They go on and off the medication quite frequently so an individual might be in and out of a hospital.
>
> Counsel: Why don't they like to take their lithium?
>
> Dr. Thompson: They like the manic high. They like the excitement.
>
> Counsel: Okay. But ultimately when he got out of the state hospital would be up to the courts, correct?
>
> Dr. Thompson: I don't know whether it would be up to the courts or the hospital. I think you would have to have somebody saying that there is a grounds to continue to hold him or a grounds not to hold him.
>
> Counsel: Well, you know these prosecutors would show up every time there was a hearing.
> Dr. Thompson: I assume they would.

[R. Proper, Tape 50 at 450-466[5]]

During the evidentiary hearing, defendant's trial counsel testified that he wanted to assure the jury that Araiza would not simply be released if the jury found him not guilty by reason of

---

[5] Using a cassette recorder with 610 counters per side.

insanity. [Doc. 7 Ex. W pp. 1-2] The state habeas court ruled that this was a reasonable trial tactic given the overwhelming evidence against Araiza, the heinous nature of the offenses, and the available evidence regarding Araiza's mental condition. *Id*.

Araiza has shown neither a Supreme Court case with indistinguishable facts that was decided differently nor that the state court decision reached a conclusion opposite to that of the Supreme Court on a question of law. Araiza has not shown that counsel's performance was deficient or that such a deficiency would have a reasonable probability of changing the result. The decision to reassure the jurors that Araiza would not simply be let free if found not guilty by reason of insanity was a reasonable trial tactic and did not constitute ineffective assistance of counsel.

### **RECOMMENDED DISPOSITION**

For the reasons stated herein, I recommend that:

(1) the Motion to Dismiss Petition for Writ of Habeas Corpus with Prejudice [Doc. 6] be GRANTED, and

(2) the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody [Doc. 1] be DENIED.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

                                        *William P. Lynch*
                                        WILLIAM P. LYNCH
                                        UNITED STATES MAGISTRATE JUDGE